IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESUS SIERRA TORO,<br><br>Defendant. | INFORMATION 25-120 (PAS)<br><br>VIOLATION:<br><br>18 U.S.C. § 1343 and 1349<br><br>**(ONE COUNT)** |

THE UNITED STATES ATTORNEY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

*The United States Small Business Administration and the CARES Act*

1. The United States Small Business Administration ("SBA") was an agency within the executive branch of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and assist in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks and other lenders. These loans had government backed guarantees.

2. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief under the CARES Act was

authorization for the SBA to issue loans to small businesses and non-profit entities experiencing revenue loss due to the pandemic.

*The Economic Injury Disaster Loan Program*

3. One form of such assistance was the Economic Injury Disaster Loan ("EIDL") program, which provided loan assistance for certain businesses negatively affected by the COVID-19 pandemic. To qualify for an EIDL loan, a business had to, among other requirements, be in operation prior to February 1, 2020.

4. Applicants for EIDL loans used the SBA online portal to submit their application materials. The SBA servers that processed the EIDL loan applications were based outside of Puerto Rico.

5. Applicants had to certify that the information in the application was true and correct, under penalty of perjury and applicable criminal statutes. The application process involved filling out data fields relating to the size and ownership of the affected business entity, and other information about the relevant business for the 12 months prior to COVID-19 impacting the national economy, such as the number of employees in the business, the gross business revenues realized, and the cost of goods sold. This information, submitted by the applicant, was then used by SBA systems to calculate the amount of money the applicant was eligible to receive.

6. Non-profit applicants and non-agricultural for-profit applicants were both generally eligible to receive an EIDL loan of up to $150,000, with a 30-year

scheduled repayment, deferred for 12 months. Some applicants were also eligible for advance funds of up to $15,000.

7. Any funds paid by the SBA under an EIDL loan were processed and issued from various locations in the Continental United States, including Iowa, Colorado, and Virginia, and sent to the applicant borrower's financial institution.

8. Pursuant to the provisions governing the EIDL program, loan proceeds could only be used by the affected business receiving EIDL loans for certain permissible expenses. The loans could be used by the business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

*The Paycheck Protection Program*

9. Another form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

10. To obtain a PPP loan a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the small business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business, through its authorized representative, was required to provide, among other things, its

average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

11. PPP loan applications were processed by participating financial institutions. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

12. PPP loan proceeds could only be used by the business on certain permissible expenses, such as payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on the allowable expenses within a designated period of time and used a certain percentage of the PPP loan proceeds towards payroll expenses.

*Relevant Financial Institution*

13. Bank 1 was a financial institution based in San Juan, Puerto Rico, and an approved SBA lender of PPP loans.

## COUNT ONE
### Conspiracy to Commit Wire Fraud
### 18 U.S.C. § 1343 and 1349

14. The factual allegations of paragraphs 1 through 13 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

*The Conspiracy*

15. Beginning in approximately April 2020 and lasting until at approximately January 2022, the exact dates being unknown, in the District of Puerto Rico, and elsewhere, defendant: JESUS SIERRA TORO and others did knowingly and intentionally combine, conspire, confederate and agree to devise a scheme and artifice to defraud and to obtain money and property from the United States Small Business Administration and Bank 1, by means of false and fraudulent pretenses, representations and promises; and for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, *United States Code*, § 1343.

*Objects of the Conspiracy*

16. The objects of the conspiracy were for the co-conspirators to unjustly enrich themselves by obtaining PPP and EIDL loan proceeds under materially false pretenses and to prevent detection of the conspiracy.

*Manner and Means of the Conspiracy*

17. The manner and means by which Defendant and his co-conspirators would accomplish and further the objects of the conspiracy, among others, included the following:

18. It was part of the manner and means of the conspiracy that Defendant and his co-conspirators would submit and cause to be submitted fraudulent EIDL and PPP loan applications that contained materially false and fraudulent information and supporting documentation, at times including false and fictitious tax documents, payroll records, bank records, and identification documents.

19. It was part of the manner and means of the conspiracy that others were recruited to obtain EIDL and PPP loans utilizing false representations and under false pretenses.

20. It was part of the manner and means of the conspiracy that the personal identifying information of others was obtained for use in applying for PPP and EIDL loans.

21. It was part of the manner and means of the conspiracy that Defendant and his co-conspirators would make, and cause to be made, false statements to the SBA and Bank 1 in connection with the fraudulent applications for PPP and EIDL loans, including false representations regarding 2019 income, the number of employees to whom wages had been paid, and false certifications that the loans would be used for permissible purposes.

22. It was part of the manner and means of the conspiracy that R.P.R., an employee of Bank 1 responsible for processing PPP loan applications, processed and submitted fraudulent PPP applications to the SBA through Bank 1's systems. R.P.R. also facilitated the opening of bank accounts at Bank 1 which would be used to receive the proceeds of the fraudulent PPP applications.

23. It was part of the manner and means of the conspiracy that Defendant and his co-conspirators would corruptly give, offer, and promise payments to R.P.R., with intent to influence and reward R.P.R. in connection with the submission, processing, and disbursement of PPP and EIDL funds.

24. It was part of the manner and means of the conspiracy that Defendant and his co-conspirators would utilize the fraudulently obtained EIDL and PPP loan proceeds to engage in financial transactions designed to create the appearance of being bona fide business expenditures, including payroll expenses, in order to disguise the true nature of the financial transactions.

25. It was part of the manner and means of the conspiracy that recipients of the fraudulently obtained EIDL and PPP loans were directed to remit a certain amount of the proceeds of the loans to leaders and organizers of the conspiracy.

26. It was part of the manner and means of the conspiracy that the remittances were collected in the form of cash and checks and delivered to leaders and organizers of the conspiracy.

27. It was part of the manner and means of the conspiracy that Defendant and his co-conspirators utilized fraudulently obtained EIDL and PPP loan proceeds to benefit themselves and others, including for expenses prohibited under the requirements of the PPP and EIDL programs.

## FORFEITURE NOTICE

28. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, *United States Code*, § 981(a)(1)(C), and Title 28, *United States Code*, § 2461(c), in the event of Defendant's conviction of the offense set forth in Count 1 of this Information.

29. Defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes the following specific property:

- All right, title, and interest in 501 Calle Elisa Colberg Cond Baldorioty Gardens Apt 3-B, San Juan, PR 00907-2607, together with all improvements and appurtenances; and

- All right, title, and interest in Property Located at Carr 181 Km 2.2 Bo Quemados, San Lorenzo, PR 00754, together with all improvements and appurtenances.

30. Pursuant to Title 21, *United States Code*, § 853(p), as incorporated by Title 18, *United States Code*, § 982(b) and Title 28, *United States Code*, § 2461(c), Defendant

shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

W. Stephen Muldrow
United States Attorney

_____
Myriam Y. Fernández-González
Assistant United States Attorney
Chief, Asset Recovery & Money Laundering Division

_____
Daniel J. Olinghouse
Assistant United States Attorney

Dated: 2/24/25